No. 81,558

DANA R. RÖCKERS, *Appellant*, v. KANSAS TURNPIKE AUTHORITY, *Appellee.*

(991 P.2d 889)

Opinion filed November 5, 1999.

*David O. Alegria*, of McCullough, Wareheim & LaBunker, P.A., of Topeka, argued the cause and was on the briefs for appellant.

*C. Matt Swafford*, of Polsinelli, White, Vardeman & Shalton, of Topeka, argued the cause, and *William W. Sneed* and *Teresa L. Sittenauer*, of the same firm, were on the brief for appellee.

The opinion of the court was delivered by

LARSON, J.: This appeal requires us to decide whether the Kansas Turnpike Authority (KTA) is a municipality upon which a notice of claim must be served pursuant to K.S.A. 12-105b(d). If the KTA is not a municipality and a notice of claim was not required, the statute of limitations has expired on Dana R. Rockers' petition unless the KTA is equitably estopped from utilizing this affirmative defense.

## Facts

The KTA terminated Rockers' employment on December 4, 1992. Three days prior to the expiration of the 2-year statute of limitation under K.S.A. 60-513(a)(4), Rockers served the KTA with notice of his claim of retaliatory discharge. This notice was given in the belief that the KTA was a municipality and that such notice was required. After the KTA did not respond within 120 days, Rockers filed his petition against the KTA in district court on March 30, 1995.

KTA's answer denied Rockers' claim and asserted the affirmative defense of the statute of limitations. The KTA also moved to dismiss, arguing that the KTA was not a municipality and that Rockers had filed his petition after expiration of the 2-year limitation period.

In response, Rockers argued the KTA is a municipality as defined in K.S.A. 12-105a and, based on the provisions of the Kansas Tort Claims Act (KTCA), a notice of claim was required. Rockers also argued that, even if notice of claim was not required, his notice should be construed as commencement of an action and the court should equitably find the giving of the notice was sufficient to toll the statute of limitations. Finally, Rockers argued the KTA should be estopped from raising the limitations defense by reason of the KTA's silence and actions which led Rockers' attorney to believe a notice of claim was required.

The motion to dismiss was argued before a Shawnee County District Judge and taken under advisement. Before a decision was issued, another judge issued a memorandum decision granting the motion to dismiss. Rockers appealed and the Court of Appeals held that each party's counsel should have been given notice of the

reassignment of the case. The trial court's decision was therefore reversed and the case remanded. *Rockers v. Kansas Turnpike Authority*, No. 76,688, unpublished opinion filed October 3, 1997.

Upon remand, the motion to dismiss was granted with a finding that the KTA was not a municipality so that the notice requirements of K.S.A. 12-105b(d) did not apply and did not toll the statute of limitations. The trial court further held that the elements of equitable estoppel claimed by Rockers were not present.

Rockers appeals. Our jurisdiction is pursuant to K.S.A. 20-3018(c).

## Standard of Review

Because the trial court considered certain affidavits presented by Rockers, we treat the motion to dismiss as one for summary judgment. See *Decker v. Kansas Dept. of SRS*, 24 Kan. App. 2d 155, 156, 942 P.2d 667, *rev. denied* 262 Kan. 960 (1997). Summary judgment should be granted where the pleadings, answers to interrogatories, depositions, and admissions on file, together with any affidavits, show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Decker*, 24 Kan. App. 2d at 156. We have also said:

"Where the defendant pleads a statute of limitation and moves for summary judgment and it appears that the action is barred by the appropriate statute of limitation and there is no genuine issue as to any material fact in connection with such statute, then the motion should be granted." *Hartman v. Stumbo*, 195 Kan. 634, Syl. ¶ 2, 408 P.2d 693 (1965).

## Is The KTA A Municipality
## For Purposes Of Requiring Notice Under K.S.A. 12-105b(d)?

Rockers' first contention is the trial court erroneously held the KTA is not a municipality within the meaning of the KTCA or the claim notice statute. He argues the KTA is an "authority . . . or other instrumentality [of the state]" within the definition of "municipality" as it is defined in K.S.A. 75-6102(b). In addition, he says it is a "taxing unit" or "taxing subdivision of the state" within the definitions of municipality found in K.S.A. 12-105a(a) and K.S.A. 75-6102(b), respectively.

If Rockers is correct that the KTA is a municipality, then the statute of limitation was tolled by his proper filing of the notice, and his subsequent filing of his petition in the district court was timely. If the KTA is not a municipality, his petition was not timely filed.

Resolution of this issue requires interpretation of various statutes. Interpretation of a statute is a question of law over which this court exercises unlimited review. *Tompkins v. Bise*, 259 Kan. 39, 43, 910 P.2d 185 (1996). In construing statutes, the legislative intent is to be determined from a general consideration of the entire act. To the extent possible, the court should attempt to reconcile different provisions so as to make them consistent, harmonious, and sensible. *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643-44, 941 P.2d 1321 (1997). The legislature is presumed to intend that its enactments be given a reasonable construction, so as to avoid absurd or unreasonable results. *State v. Le*, 260 Kan. 845, Syl. ¶ 4, 926 P.2d 638 (1996).

The Kansas Tort Claims Act, K.S.A. 75-6101 to 75-6115, inclusive, provides that "governmental entities" shall be liable for the negligent or wrongful acts or omissions of their employees acting in the scope of their employment, subject to the limitations of the Act. K.S.A. 75-6103. K.S.A. 75-6102 contains separate definitions for governmental entity, state, and municipality: " 'Governmental entity' means state or municipality," K.S.A. 75-6102(c); " 'State' means the state of Kansas and any department or branch of state government, or any agency, *authority,* institution or other instrumentality thereof" (emphasis added) K.S.A. 75-6102(a); and " 'Municipality' means any county, township, city, school district or other political or taxing subdivision of the state, or any agency, *authority,* institution or other instrumentality thereof" (emphasis added) K.S.A. 75-6102(b). Although Rockers points to the word "authority" as being included in the municipality definition it must be pointed out it is also included in the state definition as well.

Chapter 12 of the Kansas Statutes Annotated, entitled "CITIES AND MUNICIPALITIES," contains K.S.A. 12-105b(d), the notice of claim provision at issue in this case, which states: "Any person having a claim against a *municipality* which could give rise to an

action brought under the Kansas tort claims act shall file a written notice as provided in this subsection before commencing such action. The notice shall be filed with the clerk or governing body of the municipality . . . ." (Emphasis added.)

K.S.A. 12-105a(a) provides various definitions, including one for municipalities:

" '*Municipality*' means and includes county, township, city, school district of whatever name or nature, community junior college, municipal university, drainage district, cemetery district, fire district, *and other political subdivision or taxing unit*, and including their boards, bureaus, commissions, committees and other agencies, such as, but not limited to, library board, park board, recreation commission, hospital board of trustees having power to create indebtedness and make payment of the same independently of the parent unit." (Emphasis added.)

Chapter 12 contains no definition for "state." There are no notice provisions under the KTCA. The notice provision of K.S.A. 12-105b clearly does not apply to state governmental entities—it applies only to municipalities.

By the terms of the statute under which it was created, the KTA is a "body politic and corporate" and "a public instrumentality," and its exercise of its state-granted authority to construct, operate, and maintain turnpike projects in this state is deemed to be the performance of "an essential governmental function." K.S.A. 1998 Supp. 68-2003. Kansas case law is also very clear on the status of the KTA. "This court has consistently held that the Kansas turnpike authority is an arm or agency of the state, created by the legislature to perform an essential governmental function. [Citations omitted.] *State ex rel v. Kansas Turnpike Authority*, 176 Kan. 683, 273 P.2d 198 (1954)." *Flax v. Kansas Turnpike Authority*, 226 Kan. 1, 5, 596 P.2d 446 (1979). Based on the clear and long-time authority cited above, the trial court held, and we agree, that the KTA is a state arm or agency, rather than a municipality.

The KTCA clearly distinguishes between two types of governmental entities: state entities and municipalities. These entities are treated differently in various respects in the Act. *See e.g.*, K.S.A. 75-6106; K.S.A. 75-6110; K.S.A. 75-6112. As we previously pointed out, both the definition of "state" and the definition of "municipality" in K.S.A. 75-6102 include the words "authority . . . or

other instrumentality." Obviously, some "authorities" will be state entities and some will be municipal entities. In light of prior case law as to the nature of the KTA, it is clear the KTA is a state agency and not a municipality.

An examination of the definition for "municipality" in K.S.A. 12-105a also reveals that the state-created Kansas Turnpike Authority does not fit with the other kinds of municipal entities listed in the definition of municipality in K.S.A. 12-105a(a). That definition includes, for instance, "county", "township", "school district", "drainage district", and the boards, bureaus and commissions of such units, such as library boards and park boards. Where enumeration of specific things is followed by a more general word or phrase, (such as the general phrase "or other political subdivision" in K.S.A. 12-105a[a]), the general word or phrase should generally be understood to refer to things of the same kind or within the same classification as the specific terms. *State Bd. of Nursing v. Ruebke*, 259 Kan. 599, 620, 913 P.2d 142 (1996). Moreover, when there is doubt as to the particular meaning of a word taken by itself, doubt may be removed by reference to associated words. *Farm Bureau Mutual Ins. Co. v. Carr*, 215 Kan. 591, 596, 528 P.2d 134 (1974). When we consider all of these statutory provisions it is clear the legislature did not intend the KTA to be considered a municipality under either K.S.A. 12-105a(a) or K.S.A. 75-6102(b).

Rockers alternatively contends that because K.S.A. 68-2004(a)(7) gives the KTA power to set and collect tolls for transit on the turnpike, the KTA is a "taxing unit" or "taxing subdivision of the state" within the definitions of municipality stated in K.S.A. 12-105a(a) and K.S.A. 75-6102(b).

The assessment of taxes and the collection of fees are distinctly different concepts.

We said in *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421, 427, 854 P.2d 57 (1993):

"[A] tax is a forced contribution to raise revenue for the maintenance of governmental services offered to the general public. In contrast, a fee is paid in exchange for a special service, benefit, or privilege not automatically conferred upon the general public. . . . Payment of a fee is voluntary—an individual can avoid the

charge by choosing not to take advantage of the service, benefit, or privilege offered."

The tolls charged on the KTA turnpike are not taxes but rather fees for the privilege of using the turnpike and are designed to defray the cost of providing the service. The statutes governing the KTA provide no other provisions which could be construed as granting the power to tax. The KTA is not a taxing unit or taxing subdivision of the State.

In summary, the notice of claim requirements of K.S.A. 12-105b(d) do not apply to State authorities and other State entities. Because the KTA is not a municipality, Rockers' giving of notice under K.S.A. 12-105b(d) did not toll the running of the statute of limitations. Rockers' action was not commenced within the time allowed by law.

## Rockers' Equitable Estoppel Argument

Rockers next argues the KTA should be equitably estopped from relying on the statute of limitation in this case.

"A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 (1977).

Each element of estoppel must be proven or the claim will fail. Estoppel will not be held to exist where facts are ambiguous or subject to more than one construction. *Ram Co. v. Estate of Kobbeman*, 236 Kan. 751, Syl. ¶ 5, 696 P.2d 936 (1985).

Equitable estoppel can be applied to bar a party from relying on the defense of the statute of limitations. Where a defendant has "by deception or in violation of his duty toward plaintiff, caused him to subject his claim to the statutory bar, defendant must be charged with having wrongfully obtained an advantage . . . and this can be done by his silence when under an affirmative duty to speak. [Citation omitted.]" *Klepper v. Stover*, 193 Kan. 219, 222, 392 P.2d 957 (1964).

In arguing estoppel, Rockers' attorney submitted to the trial court his own affidavit and one from his administrative assistant.

According to the attorney's affidavit, on December 1, 1994, while preparing to file the completed petition, his law clerk questioned whether notice had to be given under K.S.A. 12-105b(d). The attorney called the KTA's Wichita headquarters and was referred to Rod Fogo, Chief Engineer-Manager. The attorney told Fogo he had one day to file suit against the KTA unless Rockers was required to give notice under the notice statute. Fogo referred the call to Paul Dugan, KTA's General Counsel.

The affidavit states the attorney called Dugan and told him Rockers was ready to file a petition against the KTA for retaliatory discharge. He told Dugan that they had discovered "the notice provisions of the Kansas Tort Claims Act and if [they] had to give notice, [they] needed the name and address of KTA's clerk and rather than filing [the] petition, [they] would serve notice and wait 120 days to file the petition."

The administrative assistant's affidavit stated that she heard Rockers' attorney mention on the phone that through their research they had discovered that there was a notice requirement and that the statute required service of the claim letter to be made upon the clerk of the municipality. The attorney asked Dugan the identity of the clerk. According to both affidavits, Dugan told the attorney that Fogo would be the person to serve. Dugan also asked that a copy be sent to him.

The attorney stated that, had Dugan told him the KTA was not subject to the notice provisions, he would have filed Rockers' petition in the district court immediately instead of filing the notice of claim.

Dugan stated in the KTA's trial brief that, to his knowledge, no litigant had ever before asserted that K.S.A. 12-105b(d) applied to a State authority like the KTA, and that the KTA had never claimed as a defense in any case that notice pursuant to K.S.A. 12-105b(d) was a condition precedent to a suit against the KTA.

Rockers contends estoppel due to silence arose when Dugan failed to tell his attorney about Dugan's belief that the KTA was not subject to the notice statute and that it had never been held

subject to the statute. Although Rockers concedes that counsel does not usually have a duty to do research for, or give advice to, opposing counsel regarding the law, he claims a duty to speak existed in this case when his attorney asked who to serve if service of notice was required. He argues that Dugan should have told him at that point that notice was not required. Rockers says the knowledge that the notice provision did not apply to the KTA and that the KTA had never previously been considered a municipality was knowledge available only to the KTA. He says he relied on Dugan's silence and would have filed the petition instead of sending notice of the claim if Dugan had told him he did not need to give notice.

Rockers also argues that Dugan affirmatively misled his attorney into thinking the notice provisions applied to the KTA by providing the name of the person to serve if the notice provision applied.

Rockers has failed to establish each of the elements of estoppel (acts, omissions, representations, or silence when there is a duty to speak; inducement to believe certain facts existed; and rightful reliance leading to the party's prejudice).

Estoppel by silence is often described as involving silence as to material knowledge not held by the other. See *Ferrel v. Ferrel*, 11 Kan. App. 2d 228, 234, 719 P.2d 1, *rev. denied* 239 Kan. 693 (1986). The material information Rockers complains about not receiving did not consist of material facts or knowledge known only to the KTA. The relevant statutes and the case law applicable to those statutes, the fact our case law has always described the KTA as an arm or instrumentality of the State, and the fact the KTA has never been held to be a municipality subject to notice under K.S.A. 12-105b(d) were all facts and legal information equally available to both parties.

Rockers did not rightfully rely on Dugan's silence or responsive statements. The KTA had no duty to speak, it did not assert that notice was required, and it did not affirmatively mislead the attorney as to material knowledge held only by the KTA. The attorneys for each side are responsible to their respective clients for researching the law and drawing their own conclusions regarding the applicability of the notice statute. A party cannot base a claim of estoppel on its own acts or omissions induced by the party's own

conduct. *Gillespie v. Seymour,* 250 Kan. 123, 130, 823 P.2d 782 (1991). Opposing counsel had no duty to give Rockers his legal opinion on this unsettled point of law and Rockers did not rightfully rely on opposing counsel's failure to express an opinion.

Furthermore, in order to show reliance, the party " 'must show some change in position in reliance on the adversary's misleading statement.' " *Bowen v. Westerhaus,* 224 Kan. 42, 46, 578 P.2d 1102 (1978) (quoting *In re Morgan,* 219 Kan. 136, 137, 546 P.2d 1394 [1976]). Here, Rockers' attorney stated they planned to file a notice of claim and merely contacted Dugan with regard to who should receive the notice. Rockers cannot show he changed his position based on Dugan's silence.

There is simply no basis here for the application of equitable estoppel.

### Rockers' Equitable Tolling Argument

Rockers also argues this court should use its equitable powers to construe his notice as the commencement of his action and then consider the petition's filing date as "reverting back" to the time of the service of notice. The only authority Rockers cites for this argument is K.S.A. 60-215(c).

Under K.S.A. 60-215(c), a plaintiff may amend an original pleading to change the party against whom a claim is asserted, and the amendment will relate back, if, within the period provided by the statute of limitations, the party being brought in by the amendment had notice of the action such that it is not prejudiced in its defense, and knew or should have known that the action would have been brought against it if not for the plaintiff's mistake as to the proper party's identity. Rockers argues K.S.A. 60-215(c) should apply by analogy because (1) he acted in good faith, (2) the KTA's opportunity to defend the suit was not harmed by it receiving the notice, and (3) the KTA allegedly misled him and wrongfully remained silent.

K.S.A. 60-215(c) is not applicable here; it presupposes a timely filing of an original petition, relates to the changing of the named parties, and represents a *legislative* decision to provide relief from the usual pleading and filing requirements *in a particular set of*

*circumstances*. Had the legislature desired to similarly provide the kind of relief sought by Rockers to deal with mistaken reliance on the notice requirements of K.S.A. 12-105b(d), it could have done so.

Rockers' remaining arguments on this issue are merely a revisiting of his equitable estoppel arguments, which have been rejected.

Affirmed.