No. 85,110

EMPLOYERS REINSURANCE CORPORATION, *Appellee,* v. KANSAS COMMISSIONER OF INSURANCE, KATHLEEN SEBELIUS; and KANSAS DEPARTMENT OF HUMAN RESOURCES, *Appellants.*

(21 P.3d 505)

Opinion filed April 20, 2001.

*John L. Yeary,* of Kansas Department of Human Resources, and *Margaret A. Gatewood,* of Kansas Insurance Department, argued the cause and were on the brief for appellants.

*David A. Hanson,* of Glenn, Cornish, Hanson & Karns, Chtd., of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case concerns the assessment of costs to pay for the administration of the Kansas Workers Compensation Act and the

Workers Compensation Fund. The case is on judicial review of a final order of the Kansas Commissioner of Insurance (Commissioner) under K.S.A. 77-621 of the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA).

The Commissioner affirmed a hearing officer's order requiring petitioner Employers Reinsurance Corporation (ERC) to pay assessments and to provide reports of claim loss payments paid out under its workers compensation policies. ERC objects to the payments. The district court found that the Commissioner erroneously interpreted and applied the statutes at issue. In reversing the Commissioner, the district court reasoned that ERC cannot be subject to assessment because it neither writes workers compensation insurance coverage nor pays benefits to employees under the Workers Compensation Act. The Kansas Department of Human Resources (KDHR) intervened because the Commissioner's order affects assessments made by KDHR's Division of Workers Compensation. The Commissioner and the KDHR appeal.

Finding no error, we affirm. We use "Commissioner" where appropriate in the balance of our opinion to refer to both appellants.

Our jurisdiction is under K.S.A. 20-3017 (transfer from the Court of Appeals on the Commissioner's motion).

The question for resolution is whether ERC is a workers compensation insurance carrier required to pay assessments to the Director of Workers Compensation under K.S.A. 74-712 to K.S.A. 74-716 and to the Commissioner under K.S.A. 44-566a.

## FACTS

The facts are not in dispute. ERC is a stock fire and casualty insurance company. The Kansas Insurance Department (KID) has authorized ERC to sell workers compensation insurance, and also automobile liability, accident and health, surety and forgery bonds, and general liability insurance. The Commissioner has regulatory jurisdiction over ERC and its insurance activities under K.S.A. 2000 Supp. 40-102, K.S.A. 40-103, and K.S.A. 77-501 *et seq.*

ERC issues a KID-approved policy, entitled "Specific Excess Workers Compensation and Employers Liability Indemnity Policy"

(policy). The policy has specific and aggregate limits and is sold to Kansas employers self-insuring their risk of loss for workers compensation and employer's liability benefits. ERC writes no workers compensation coverage in Kansas. The policy provides indemnity coverage to employers and does not provide workers compensation benefits or payments directly to injured workers. The parties stipulated that the policy does not contain provisions for such benefits as required by K.S.A. 44-501 to K.S.A. 44-520, K.S.A. 44-532, K.S.A. 44-559, and K.S.A. 44-559a.

A self-insured employer contracting with ERC pays its own workers compensation benefit payments to injured employees. The policy provides for reimbursement of the self-insured employer for amounts greater than the agreed retention/deductible amount, including non-workers compensation payments and expenses, such as attorney fees and claim adjusting expenses. When the self-insured employer reaches its aggregate retention limit, policy coverage indemnifies that employer for the amount above the aggregate retention limit. The indemnification payment is not identified to individual claim benefits.

The statutory scheme under K.S.A. 74-712 to -716 provides for assessments to be made by the Director of Workers Compensation for the administration of the Workers Compensation Act. The assessments are against workers compensation insurance carriers, self-insurers, and group-funded workers compensation pools. ERC has not paid these assessments and denies liability for such assessments regarding amounts paid to self-insurers in the calendar years 1993, 1994, and 1995.

In addition, K.S.A. 44-566a provides for assessments to be made by the Commissioner for the administration of the Workers Compensation Fund against workers compensation insurance carriers, self-insurers, and group-funded workers compensation pools. ERC has not paid these assessments and denies liability for such assessments concerning amounts paid to self-insurers in calendar years 1989, 1990, 1991, 1993, 1994, and 1995.

### The District Court's Rulings

ERC filed a petition for judicial review. The district court, in

reversing the Commissioner, concluded that ERC writes no insurance coverage that pays benefits or claims to employees under the Workers Compensation Act.

The district court, in a well-reasoned opinion, found that under the plain language of K.S.A. 74-712, "it is clear that [ERC] was not one of the insurers that the legislature intended this provision to cover." 74-712(a) says that "the legislature shall determine the amount of administrative expense to be obtained . . . from workers' compensation insurance carriers [and] self-insurers . . . and the amount of such expense to be obtained from other sources." The district court noted that K.S.A. 74-712 clearly reserves the right of the legislature to decide who pays assessments. If the legislature had meant for indemnity carriers to be assessed, in addition to the self-insurer for whom such a carrier provides excess coverage, the legislature would have included indemnity carriers in the list. See *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 245, 834 P.2d 368 (1992) (noting that " '[i]t is presumed the legislature understood the meaning of the words it used and intended to use them' ").

The district court emphasized that K.S.A. 74-712 requires the self-insured employer to be assessed on the amount the self-insured paid for injuries under the workers compensation laws. The district court found that: (1) assessing payments made by ERC to reimburse a self-insured employer would result in a double assessment of those benefits, (2) the effect of the relevant statutes is to provide the Division of Workers Compensation with funds to cover administration and expenses of the administration in proportion to the claims the insurer has paid.

According to the district court:

"This purpose is accomplished when the self-insurer pays its share of the assessment based on the benefits it has paid. To further require the indemnity provider to pay assessments when it pays no direct benefits would not accomplish the purpose of the statute or further any legislative goal."

## DISCUSSION

We exercise the same standard as the district court in reviewing

the Commissioner's decision. *Hickman Trust v. City of Clay Center*, 266 Kan. 1022, 1036, 974 P.2d 584 (1999).

Under the Workers Compensation Act, K.S.A. 44-501 *et seq.*, employers pay compensation to their employees for personal injury caused by accidents arising out of and in the course of employment. K.S.A. 44-532(b) requires employers to secure the payment of compensation in one of the following ways: (1) by insuring payment of compensation with an insurance carrier authorized to transact the business of workers compensation insurance in Kansas, (2) by showing to the director that the employer carries its own risk as a self-insurer and providing proof of the financial ability to pay the compensation, or (3) by maintaining a membership in a qualified group-funded workers compensation pool. We are dealing here with the self-insurer category of 44-532(b).

We next examine the statutory provisions for assessment of the costs of administration.

K.S.A. 74-712 says:

"The expense of the administration of the workers' compensation law shall be financed in the following manner:

"(a) The director of workers' compensation shall estimate as soon as practicable after January 1 of each year the expenses necessary for the administration of the workers' compensation law for the fiscal year beginning on July 1 thereafter. Such estimate shall be provided to the legislature, and the legislature shall determine the amount of administrative expense to be obtained under the provisions of this act from workers' compensation insurance carriers, self-insurers and group-funded workers' compensation pools and the amount of such expense to be obtained from other sources; such carriers' and self-insurers' and group-funded workers' compensation pools' share of such expense shall be called 'carrier's share of expense';

"(b) the carrier's share of expense, as determined in subparagraph (a) hereof, shall be prorated among the insurance carriers *writing workers' compensation insurance in the state*, self-insurers and group-funded workers' compensation pools.

"The director shall determine the total amount of benefit payments made pursuant to the workmen's compensation act, paid out as a result of injuries received in the state of Kansas for the immediately preceding calendar year, and the director's determination shall be conclusive. The director shall list the amount of workers' compensation benefits paid as a result of injuries received in the state of Kansas and paid by each workers' compensation insurance carrier, self-insurer

and group-funded workers' compensation pool during such period." (Emphasis added.)

K.S.A. 2000 Supp. 74-713 places the responsibility on the Director of Workers Compensation to collect "each carrier's, self-insurer's and group-funded workers' compensation pools' proportionate amount of the carrier's share of expense."

K.S.A. 74-716 says:

"The director may require from each workers' compensation insurance carrier, self-insurer or group-funded workers' compensation pool, at such time and in accordance with regulations of the director, reports of all payments of compensation made by such workers' compensation insurance carrier, self-insurer or group-funded workers' compensation pool during any period."

The legislature has charged the Commissioner with effecting assessments for the Workers Compensation Fund.

K.S.A. 44-566a(b)(1) says in part:

"On June 1 of each year, the commissioner of insurance shall impose an assessment against all insurance carriers, self-insurers and group-funded workers compensation pools insuring the payment of compensation under the workers compensation act, and the same shall be due and payable to the commissioner on the following July 1, the proceeds of which shall be credited to the workers compensation fund. . . . The total amount of each such assessment shall be apportioned among those upon whom it is imposed, such that each is assessed an amount that bears the same relation to such total assessment as the amount of money paid or payable in workers compensation claims by such insurance carrier, self-insurer or group-funded workers compensation pool in the immediately preceding calendar year bears to all such claims paid or payable during such calendar year."

The Commissioner points out that ERC is an insurance company that conducts the business of insurance in Kansas. ERC does not dispute that it is an insurance carrier. The policy reimburses employers who self-insure for workers compensation benefits amounts exceeding an agreed retention amount. ERC contracts with its insureds, assumes the risk of an insurable interest, and makes payments to insureds arising from workers compensation claims. The above factors according to the Commissioner show that ERC is a "workers compensation insurance carrier" under the statutes at issue here.

The K.S.A. 40-201 definition of "insurance company" includes companies writing contracts of indemnity. However, ERC argues that it is not the type of insurance carrier referenced in K.S.A. 74-712 and K.S.A. 44-566a(b). According to ERC, it should not be required to pay assessments because it does not pay workers compensation benefits directly to injured employees. ERC focuses, as did the district court, on the fact that K.S.A. 74-712 applies to "insurance carriers writing workers' compensation insurance in the state." ERC asserts that it does not fall within the plain meaning of K.S.A. 74-712 because it does not *write* insurance coverage or *pay benefits directly to* injured workers under the Workers Compensation Act.

Furthermore, ERC reasons that it pays indemnity benefits to employers for different types of losses and expenses, not just workers compensation benefits. Thus, it concludes that an assessment under the statutes in question would result in an assessment of various types of indemnity benefits. ERC notes that its policy with a self-insurer has an agreed retention, or deductible, which the self-insurer must meet before ERC provides indemnification. By the time the self-insurer reaches its aggregate retention limit, it could have paid out not only workers compensation benefits, but also attorney fees, loss adjusting expenses, and clerical costs unrelated to the workers compensation benefits.

The Commissioner argues that (1) no evidence has been presented to confirm that self-insurers "pay on total claims paid to covered employees," and (2) such an argument is irrelevant to the question of whether the legislature intended that self-insurers pay on *all* claims, whether within or above the retention limit. The Commissioner asserts that the terms "workers' compensation insurance carriers" (K.S.A. 74-712, -714), "insurance carriers writing workers' compensation insurance in the state" (K.S.A. 74-712), "carrier" (K.S.A. 2000 Supp. 74-713; K.S.A. 74-714), and "all insurance carriers" (K.S.A. 44-566a [b] [1]) should be construed to be broad enough to encompass ERC's insurance activities with respect to workers compensation. The Commissioner concludes that the legislature intended that *all* entities participating in providing workers compensation coverage in Kansas, even indirectly,

should pay proportionately for the expense of administering the Workers Compensation Act and the Workers Compensation Fund.

Did the legislature, under the facts here, intend for ERC to contribute to the administration cost assessment scheme? We think not. In determining legislative intent, we may look to the purpose to be accomplished and the necessity and effect of the statute. *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 971 (1990). In construing statutes, the legislative intent is to be determined from a general consideration of the entire act. We have said: "To the extent possible, the court should attempt to reconcile different provisions so as to make them consistent, harmonious, and sensible." *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 113, 991 P.2d 889 (1999). We presume that the legislature intends that its enactments be given a reasonable construction, so as to avoid unreasonable results. 268 Kan. at 113.

Under the plain meaning of K.S.A. 74-712 and K.S.A. 44-566a(b)(1), ERC was not one of the insurers that the legislature intended to cover. The effect of the statutory scheme in question here is to provide the Division of Workers Compensation and the Commissioner with funds to cover administration expenses in proportion to the claims the self-insurer has paid. Assessing payments made by ERC to reimburse a self-insured employer would result in a double assessment of those benefits.

ERC also argues that if assessments were imposed upon it, the assessments would constitute a form of double taxation. The district court agreed. Because we resolve the case on statutory interpretation grounds, we need not reach ERC's double taxation argument.

Affirmed.