NOT DESIGNATED FOR PUBLICATION

No. 113,131

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

HAROLD J. DAVIS,
*Appellee/Cross-appellant*,

v.

CITY OF TOPEKA and HOWARD H. GILES,
*Appellants/Cross-appellees.*


MEMORANDUM OPINION

Appeal from Shawnee District Court; FRANK J. YEOMAN, JR., judge. Opinion filed March 4, 2016. Affirmed and cross-appeal dismissed.


*David R. Cooper* and *Sarah A. Morse*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellants/cross-appellees.


*Cynthia J. Sheppeard*, of Weathers, Riley & Sheppeard, LLP, of Topeka, for appellee/cross-appellant.


Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.


*Per Curiam*:  On appeal, the City of Topeka and the Topeka Fire Department Chief Howard H. Giles (collectively the City) claim the district court erred by denying their motion for judgment as a matter of law. The City argues Harold J. Davis' cause of action was one of equitable estoppel and not negligent misrepresentation. Our review of the record reflects this was a case of negligent misrepresentation. The jury found the City negligently misrepresented to Davis its ability to hire him as the deputy fire chief. The

1

district court did not err in denying the City's motion. Since we affirm the district court, we dismiss Davis' cross-appeal. Affirmed and cross-appeal dismissed.

FACTS

The City's Charter Ordinance 10, first enacted in 1967, concerns the hiring and promotion of firefighters. Section 2 reads: "All new applicants for positions in the Fire Department of the City shall be required to submit to a civil service examination for the position of third class firemen."

In 2007, Chief Giles considered filling battalion chief and shift commander positions from outside the Topeka Fire Department (TFD). He also considered whether to advertise for the deputy chief position outside of the TFD. As part of his consideration, Chief Giles spoke with City personnel, including Assistant City Attorney John Dowell, about the applicability of Charter Ordinance 10 to the deputy chief position. Everyone Chief Giles spoke with in the City's management team believed the City could fill management-level positions, including the deputy chief position, from outside the TFD. In an email concerning the deputy chief position, Dowell replied: "I would assume that the new recruit could pass a civil service exam. If so, why not let the person take the exam out of an abundance of caution."

In February 2008, the City began advertising for battalion chiefs and shift commanders from outside the TFD. On April 18, 2008, the International Association of Firefighters Local 83 (the Union) filed *Bradshaw, et al. v. City of Topeka, et al.*, Shawnee County District Court Case No. 08-C-599, challenging the TFD's authority to hire battalion chiefs and shift commanders from outside the TFD.

The City posted the deputy chief position in May 2008, and Davis applied for the position. When Davis applied, he was working for the City of Fort Scott. As part of the

2

interview process, Davis took the civil service exam. Chief Giles offered Davis the deputy chief position on September 3, 2008.

When Chief Giles offered Davis the deputy chief position, he advised Davis the Union had filed *Bradshaw* based on Charter Ordinance 10, which challenged the City's authority to hire battalion chiefs and shift commanders from outside the TFD, but the lawsuit did not currently include the deputy chief position. On September 5, 2008, the City announced Davis had accepted the deputy chief position.

On May 28, 2009, Davis learned a decision had been filed in *Bradshaw*. The district court in *Bradshaw* held the City could only hire entry-level firefighters and fire chiefs from outside the TFD. Davis was forced to resign. His last day of employment was December 31, 2009.

With the loss of his deputy fire chief position, Davis filed suit against Chief Giles and the City claiming fraudulent misrepresentation and, in the alternative, negligent misrepresentation. At the close of Davis' case, the City verbally moved for judgment as a matter of law, which the district court denied. The jury found the City liable for negligent misrepresentation. The City again moved for judgment as a matter of law, and the district court denied its motion. The City timely appeals the denial of its motion for judgment as a matter of law. Davis cross-appeals raising five issues to be addressed by this court if we would reverse and remand this case to the district court.

ANALYSIS

The City does not challenge the sufficiency of the evidence to support the jury's verdict. On appeal, the City claims the district court's denial of its motion for judgment as a matter of law was erroneous. A trial court's decision on a motion for judgment as a matter of law, see K.S.A. 2015 Supp. 60-250,  is reviewed under the former directed

3

verdict standard of review. *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 706, 317 P.3d 70 (2014). The trial court is required to resolve all facts and inferences that may reasonably be drawn from the evidence in favor of the party against whom the motion for judgment as a matter of law is sought. 298 Kan. at 706. However, the City only raised questions of law in this appeal.  Questions of law are reviewed de novo.  *Scott v. Hughes*, 294 Kan. 403, 412, 275 P.3d 890 (2012).

*Negligent Misrepresentation Is Not the Same as Equitable Estoppel*

In *Mahler v. Keenan Real Estate, Inc.*, 255 Kan. 593, 604-05, 876 P.2d 609 (1994), Kansas adopted negligent misrepresentation as a tort. "Negligent misrepresentation addresses negligence of knowledge of a material fact and transmittal of already known material facts." *Stechschulte v. Jennings*, 297 Kan. 2, 22, 298 P.3d 1083 (2013). To establish liability for negligent misrepresentation, the plaintiff must show:

> "(1) The person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating it; (2) the party receiving the false information reasonably relied on it; and (3) the person relying on the false information is a person or one of a group of persons for whose benefit and guidance the information is supplied or a person or one of a group of persons to whom the person supplying the information knew the information would be communicated by another; and (4) the party receiving the information suffered damages. PIK Civ. 4th 127.43" *Rinehart v. Morton Buildings, Inc.*, 297 Kan. 926, 937, 305 P.3d 622 (2013).

In contrast, equitable estoppel is a remedy. "Equitable estoppel is the effect of the voluntary conduct of a party whereby the party is precluded, both at law and in equity, from asserting rights *against another party relying on such conduct.*" (Emphasis added.) *Petty v. City of El Dorado*, 270 Kan. 847, 853, 19 P.3d 167 (2001).

4

> "'A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it has a duty to speak, induced it to believe certain facts existed. It must show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.'" *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 116, 991 P.2d 889 (1999) (quoting *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 527, 561 P.2d 792 [1977]).

Negligent misrepresentation and equitable estoppel are not fundamentally the same. Though justifiable reliance is an element of both, the remaining elements are distinct. Negligent misrepresentation results from the defendant's failure to exercise reasonable care or competence in obtaining or communicating false information. *Rinehart*, 297 Kan. at 937. In contrast, equitable estoppel results when a party is induced to believe certain facts existed based on another party's acts, representations, admissions, or silence when it had a duty to speak. *Rockers*, 268 Kan. at 116. In a negligent misrepresentation claim, a plaintiff must show damages. *Rinehart*, 297 Kan. at 937. In an equitable estoppel claim, a party must only show it would be prejudiced if the other party was allowed to deny the fact's existence. *Rockers*, 268 Kan. at 116.

Further, the end result of negligent misrepresentation and equitable estoppel are not the same. Upon a successful showing of negligent misrepresentation, a defendant is liable for damages. *Stechschulte*, 297 Kan. at 23. Upon a successful showing of equitable estoppel, the court estops a guilty party from taking advantage of his or her conduct. *Robinson v. Shah*, 23 Kan. App. 2d 812, 829, 936 P.2d 784 (1997).

### *Equitable Estoppel Is Inapplicable*

While Kansas courts have repeatedly held estoppel does not apply to governmental entities performing governmental functions, this argument is inapplicable. Davis claimed negligent misrepresentation in his petition. He alleged facts supporting a

negligent misrepresentation claim and sought damages. The district court correctly determined Davis' claim was one for negligent misrepresentation, not equitable estoppel.

*Davis' Reliance on Chief Giles' Statement*

The City argues Davis' reliance on Chief Giles' statements was unreasonable as a matter of law. The City cites *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, Syl. ¶ 9, 834 P.2d 1344 (1992), for the proposition that "one contracting with a municipal corporation is bound at his peril to know the authority of the municipal body with which he deals." The City also refers us to *St. Charles v. City of Topeka*, No. 110,676, 2014 WL 3907116 (Kan. App. 2014) (unpublished opinion), *rev. denied* 302 Kan. ___ (June 29, 2015). However, both *Blevins* and *St. Charles* are distinguishable for two reasons. First, neither involved a misrepresentation claim; second, the limits of the municipalities' authority were unambiguous.

In *Blevins*, to receive the plaintiff's cooperation on an appeal before the Kansas Supreme Court, Douglas County agreed to conduct a binding election as a precondition to spending bond proceeds. After the election, Blevins sued the County, arguing the ballot question was misleading. The district court dismissed Blevins' petition for failure to state a claim upon which relief may be granted. On appeal, Blevins argued the County had agreed to hold a binding election and should be estopped from arguing otherwise. The Kansas Supreme Court held the County exceeded its statutory authority by agreeing to a binding election; and thus, any promises regarding the election were not contractual. 251 Kan. at 385.

*St. Charles* involved zoning regulations. St. Charles granted the City a temporary easement during a road construction project. The City's negotiator agreed to abandon the asphalt roadway it constructed on the easement and allow St. Charles to pursue construction of a permanent roadway. The zoning ordinance clearly required St. Charles

6

submit an amendment of the planned unit development site plan to the planning department for review and approval. However, St. Charles replaced the asphalt with concrete without amending the planned unit development site plan. The City's zoning administrator fined St. Charles. St. Charles argued the City's negotiator agreed to eliminate the need for amendment. The Court of Appeals held that "a municipal officer has no authority to agree to a zoning violation and thereby bind the municipality to that zoning violation." 2014 WL 3907116, at *11. The City was not estopped from denying the terms of the contract since the negotiator had no authority to agree to eliminate the need to amend the site plan. 2014 WL 3907116, at *15.

In contrast, Davis claimed negligent misrepresentation instead of equitable estoppel. In *Blevins* and *St. Charles*, the plaintiffs sought enforcement of unlawfully made—and therefore void—contracts. Davis did not seek enforcement of his contract; he sought damages.

In addition, the City's ordinance authorizing the City to hire a deputy fire chief was more ambiguous than the local governmental authority at issue in *Blevins* and *St. Charles*. Section 2 of Charter Ordinance 10 states: "All new applicants for positions in the Fire Department of the City shall be required to submit to a civil service examination for the position of third class fireman." Unlike the statute in *Blevins* and the zoning ordinance in *St. Charles*, this section can be interpreted two ways. It can be interpreted to mean all new applicants must take the City's civil service examination which is administered to third-class firemen. It can also be interpreted to mean all new applicants are only eligible for a third-class fireman position after taking the civil service examination.

Further, Chief Giles testified he believed he could hire from outside the TFD but would need to administer the civil service exam. Norton Bonaparte, the then city manager, testified he believed outside candidates could be hired for the deputy fire chief

7

position but would be required to take the civil service test. Bonaparte's belief was based on advice from the City's legal department. Thus, the City, through its management team, believed the City had the authority to hire Davis based on the Charter Ordinance's language. Since the City itself did not know the limits of its authority, it would be illogical to require Davis to know the limits of the City's authority. Therefore, Davis' reliance on Chief Giles' representations was not, as a matter of law, unreasonable.

*Chief Giles' statements form the basis for a negligent misrepresentation claim.*

The City argues the statements Chief Giles made to Davis were statements of legal conclusion, opinion, and of future intent. As such, the City argues the statements cannot form the basis for a negligent misrepresentation claim.

A negligent misrepresentation claim only imposes liability when a defendant "supplies information to guide others in business transactions in the course of that defendant's business." *Rinehart*, 297 Kan. at 937. The tort addresses "negligence of knowledge of a material fact and transmittal of already known material facts." *Stechschulte*, 297 Kan. at 22. As such, the tort does not apply to statements of future intent. See *Bittel v. Farm Credit Svcs. of Central Kansas*, *P.C.A.*, 265 Kan. 651, 665, 962 P.2d 491 (1998). Likewise, a negligent misrepresentation claim is inapplicable when the misrepresentations are statements of opinion. *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 221, 4 P.3d 1149 (2000). "[W]hether the alleged misrepresentations were ones of present fact or ones of opinion or future intent is clearly a question of law." *Bittel*, 265 Kan. at 665.

The City argues none of the statements made to Davis by Chief Giles support a claim of negligent misrepresentation. Instead, they argue Chief Giles' statement regarding Charter Ordinance 10's impact on the ability to hire outside the TFD for management positions was a personal opinion. They also argue Chief Giles's statement that Charter

Ordinance 10 only applies to entry level positions was an expression of personal opinion. In the alternative, the City argues all of the statements Davis alleges Chief Giles made are legal conclusions since they are based upon the City's interpretation of Charter Ordinance 10.

However, Davis also alleged Chief Giles told him the City's legal staff, the director of human resources, the city manager, and Chief Giles himself had reviewed the *Bradshaw* litigation before determining the City had the authority to hire Davis. This is neither a statement of future intent nor a statement of opinion. Instead, it is a statement of past fact. Further, whether the City's legal staff, the director of human resources, the city manager, and Chief Giles had reviewed the *Bradshaw* litigation is not a legal conclusion. It is a representation of fact and a proper basis for a negligent misrepresentation claim.

Here, the City knew when it offered the job to Davis, he would be making a substantial commitment to the City by quitting his job in Fort Scott and moving to Topeka to become the deputy fire chief of the Topeka Fire Department. The City clearly represented to Davis all of the background work it had done before offering him the position of deputy fire chief. It was reasonable for Davis to rely upon those representations in deciding to accept the position.

We affirm the district court and dismiss Davis' cross-appeal, as he acknowledged would be appropriate if we affirmed the district court.

Affirmed and Davis' cross-appeal is dismissed.

9