(173 P.3d 1149)
No. 96,559

NANCY QUANDT, *Appellee/Cross-appellee*, v. IBP, *Appellee/Cross-appellant*, and KANSAS WORKERS COMPENSATION FUND, *Appellant/Cross-appellee*.

Opinion filed January 11, 2008.

*Derek R. Chappell*, of Jordan and Chappell Law Office, of Ottawa, for appellant/cross-appellee.

*Robert R. Lee*, of Wilson, Lee, Gurney, Carmichael & Hess, of Wichita, for appellee/cross-appellee.

*Gregory D. Worth*, of McAnany, Van Cleave & Phillips, P.A., of Roeland Park, for appellee/cross-appellant.

Before GREENE, P.J., MCANANY, J., and LARSON, S.J.

MCANANY, J.: In this appeal we are asked to review an April 14, 2006, order of the Workers Compensation Board (Board). The first issue, the timeliness of the employer's appeal to the Board, turns on whether a hearing before the administrative law judge (ALJ) was a preliminary hearing and order or a final hearing and order. If the ALJ's February 2000 order was a final order, then the employer's November 2005 appeal to the Board was untimely. However, if the ALJ did not render a final order until November 2005, then the appeal was timely.

The remaining issues involve whether the claimant is entitled to benefits for her lower back injury and, if so, who should be responsible for them: the employer or the Kansas Workers Compensation Fund (Fund). Though the many factual details that make up the history of this case are well known to the parties, a brief overview is in order.

Nancy A. Quandt had a prior history of injury and treatment to her neck and knee when, in 1993, she slipped and fell while working at IBP, Inc. (IBP). She applied for a hearing, claiming she suffered injuries to her neck and knee. After receiving treatment for her injuries, she was awarded compensation in 1997. The award was assessed against the Fund since IBP hired Quandt knowing of her preexisting neck and knee conditions. The Board affirmed the award.

In 1999, Quandt applied for review and modification of the 1997 final award in order to provide benefits for a lower back condition. In February 2000, the ALJ conducted a hearing to determine whether Quandt's lower back injury resulted directly from the accident or from an altered gait she developed as a result of her knee injury. Following that hearing, she was awarded total temporary disability compensation and medical treatment benefits. This time the ALJ did not impose liability on the Fund pursuant to K.S.A. 44-567(a) because Quandt did not have a preexisting back condition and IBP did not have any requisite knowledge of her back condition. The ALJ assessed all of the liability for the lower back treatment to IBP. IBP did not immediately appeal the ALJ's order to the Board.

Numerous hearings followed. The Fund appealed to the Board. The Board remanded the case to the ALJ for a hearing on Quandt's entitlement to post-award benefits and the Fund's liability. The Fund appealed the Board's decision to this court. Our court dismissed the appeal for lack of jurisdiction.

After further hearings following the Board's remand, the ALJ determined in November 2005 that Quandt's job-related accident and the resulting knee injury aggravated a preexisting condition in her back. Again, the ALJ found that the Fund was not liable since IBP was not aware of Quandt's back problem when it hired her. IBP appealed to the Board. On further review, the Board, on April 14, 2006, found that IBP's appeal was timely and modified the award by assessing all liability for Quandt's lower back condition to the Fund rather than IBP.

The Fund now appeals, claiming that the hearing and order of February 2000 were final and IBP's appeal to the Board was untimely. The Fund claims that IBP should have appealed to the Board in 2000. Instead, IBP waited to appeal until after the ALJ's decision in November 2005. The Fund also claims the Board erred in assessing all liability for Quandt's lower back injury to the Fund.

IBP cross-appeals, claiming Quandt was barred from seeking post-award compensation since she was aware of her back injury at the time of the initial award and failed to make a claim for it. IBP also contends the ALJ could not reallocate liability for Quandt's lower back injury to IBP when the ALJ had already assessed all liability for Quandt's knee and neck injuries to the Fund.

*The February 2000 Hearing and Order: Preliminary or Final?*

The Fund claims IBP's appeal to the Board in November 2005 was untimely since the ALJ's February 11, 2000, order was a final order. On the other hand, IBP contends that the February 11, 2000, order was a preliminary hearing order which IBP could not have appealed pursuant to K.S.A. 44-551(b) (now K.S.A. 2006 Supp. 44-551[i]) until it became final in November 2005.

K.S.A. 44-534a(a)(1) permits an employer or employee to seek a preliminary hearing regarding medical treatment and the payment of temporary total disability compensation before the issu-

ance of a final award. K.S.A. 2006 Supp. 44-551(i)(1) permits appeals to the Board of preliminary awards under K.S.A. 44-534a. However, K.S.A. 44-534a(a)(2), which describes the summary nature of preliminary hearings, only provides for Board review of what it describes as jurisdictional issues, *i.e.*, "a disputed issue of whether the employee suffered an accidental injury, whether the injury arose out of and in the course of the employee's employment, whether notice is given or claim timely made, or whether certain defenses apply." K.S.A. 44-534a(a)(2) further explains: "Except as provided in this section, no such preliminary findings or preliminary awards shall be appealable by any party to the proceedings, and the same shall not be binding in a full hearing on the claim, but shall be subject to a full presentation of the facts."

As noted in *Rivera v. Cimarron Dairy*, 267 Kan. 865, 869, 988 P.2d 235 (1999), "[t]he purpose of foreclosing [an] appeal from a preliminary award or order is to afford the injured employee immediate access to medical and necessary living expenses pending a full hearing." Thus, a preliminary award of medical treatment and temporary total disability benefits is an award pending the conclusion of a full hearing on the claim and is not appealable. K.S.A. 44-534a(a)(1); *Rivera*, 267 Kan. at 869.

K.S.A. 44-528 permits modification of an award when the claimant's condition changes after the original hearing and award. See *Brandt v. Kansas Workers Compensation Fund*, 19 Kan. App. 2d 1098, Syl. ¶ 2, 880 P.2d 796, *rev. denied* 256 Kan. 994 (1994). An award under K.S.A. 44-528 modifying an earlier award of benefits is an entirely new award separate and distinct from the one it modifies. See *Ratzlaff v. Friedeman Service Store*, 200 Kan. 430, 433, 436 P.2d 389 (1968), *overruled on other grounds Ferrell v. Day & Zimmerman, Inc.*, 223 Kan. 421, 573 P.2d 1065 (1978); *Brandt*, 19 Kan. App. 2d at 1101. Thus, the same legal principles controlling an initial award of compensation generally apply to an award under the modification and review statute. *Ratzlaff*, 200 Kan. at 433.

While these principles seem rather straightforward, their application is complicated by the fact that the ALJ did not identify whether the hearing on February 4, 2000, and his subsequent order were preliminary or final. The nature of the hearing and the order

that followed is an issue of law over which our review is unlimited. See *Foster v. Kansas Dept. of Revenue*, 281 Kan. 368, 369, 130 P.3d 560 (2006).

First, in Quandt's demand letter to the Fund which preceded her hearing application, she stated she would apply for a preliminary hearing if her demands were not met. When Quandt applied for review and modification of her 1997 award, she did so under the authority of several provisions of the Workers Compensation Act, including K.S.A. 44-534a, which relates to preliminary hearings.

At the beginning of the February 2000 hearing, counsel for Quandt stated that the issue of attorney fees remained, but that it was not necessary to resolve it until after future depositions were taken. No medical evidence was introduced at the hearing. Neither Dr. Patrick Bowman, who performed surgery on Quandt's back, nor Dr. David Kassmeier, the chiropractor who initially treated Quandt for her back condition, had rendered an opinion or testified regarding Quandt's back condition. Kassmeier was deposed almost 1 year after the hearing. Bowman was deposed in January 2003, almost 3 years after the hearing.

The only evidence presented at the hearing was Quandt's testimony regarding when her lower back condition developed and whether IBP was on notice of it. As recognized in *Hampton v. Professional Security Co.*, 5 Kan. App. 2d 39, 42, 611 P.2d 173 (1980), the evidence presented here was "consistent with the limited purpose of the preliminary hearing."

The preliminary nature of the ALJ's two-page order is apparent when it is compared to Quandt's 1997 final award. The six-page 1997 award provided a detailed narrative of the record, stipulations, issues, and findings of fact; and it comprehensively dealt with all issues, including attorney fees and costs. The ALJ's February 2000 order contained no statement of findings and conclusions. It simply awarded Quandt ongoing temporary total disability, the type of relief granted under K.S.A. 44-534a at a preliminary hearing. There was no award of permanent partial disability compensation. The order did not address the numerous questions the ALJ had directed to Dr. Eric Nye, the independent medical examiner. The

order did not address the issue of attorney fees, which apparently was a point of contention.

The purpose of a preliminary hearing is to make a summary determination whether the claimant should be receiving temporary total compensation and medical treatment under the Act. *Shain v. Boeing Military Airplanes*, 22 Kan. App. 2d 913, 915, 924 P.2d 1280 (1996). That is precisely what the ALJ did in his order following the February 2000 hearing.

The Fund's reliance on *Bryant v. U.S.D. No. 259*, 26 Kan. App. 2d 435, 992 P.2d 808 (1999), is misplaced. Bryant was awarded compensation for her work-related back injury. The award made provision for future medical care, though it did not designate an authorized physician. Bryant sought reimbursement from her employer for medical bills related to further treatment of her back. When she was told that her employer considered this additional care to be unauthorized medical, she applied for a preliminary hearing to have an authorized medical provider designated for her ongoing back problem. This court ultimately concluded that the order that followed was not a preliminary order.

In *Bryant*, the hearing was to enforce the award in the final order for her back injury, not for benefits relating to a condition not considered in the final order. The hearing in *Bryant* ended the matter. There was no need for further hearings before the ALJ. Not so in Quandt's case. There remained disputed issues to be resolved by the ALJ after the award of temporary disability benefits. *Bryant* does not control. While the hearing in *Bryant* was final in nature, the hearing at issue before us was not.

The ALJ's February 11, 2000, order was not a final order. Accordingly, the Board did not err in finding IBP's appeal to be timely.

*Quandt's Lower Back Condition: A Consequence of Her Knee Injury?*

The Board found that Quandt's back condition was caused by her altered gait which, in turn, was caused by the knee injury she suffered in the accident. The Fund argues that neither of the doctors relied upon by the Board, Drs. Nye and Bowman, could un-

equivocally opine that Quandt's lower back problems were caused by her altered gait. Thus, the Fund claims, IBP failed to establish this causal connection.

Our factual review is limited to determining whether the Board's findings of fact are supported by substantial competent evidence when viewed in the light most favoring the prevailing party. In doing so, we do not reweigh the evidence or determine the credibility of the witnesses. *Neal v. Hy-Vee, Inc.*, 277 Kan. 1, 16-17, 81 P.3d 425 (2003).

The Board relied upon the opinions of Dr. Bowman, who began treating Quandt in September 1998. Quandt did not develop significant lower back symptoms until January 1999. Bowman opined that Quandt's limp aggravated her lower back condition. Though he could not quantify this aggravating factor, he believed there was a relationship between Quandt's altered gait and the progression of her lower back symptoms.

The Board also cited the opinions of Dr. Nye, who conducted an independent medical examination in November 1999. Nye reported to the ALJ that both the 1993 accident and Quandt's altered gait aggravated her lower back.

Though not cited by the Board, the testimony from Dr. Kessmeier supports the conclusion that Quandt's limp that resulted from the accident aggravated her lower back condition.

Our task is not to reweigh the evidence. There is ample evidence upon which a rational factfinder could conclude that Quandt's altered gait aggravated and rendered symptomatic her lower back condition. The Board did not err in concluding that Quandt's lower back condition was a result of her altered gait.

### Liability of the Fund for Quandt's Back Condition

The Fund contends the Board erred in finding it responsible under K.S.A. 44-567(b) for Quandt's lower back condition since IBP failed to show that it had prior knowledge of her back condition. Resolution of this issue involves statutory interpretation, a matter of law. Under the doctrine of operative construction, the Board's interpretation of the law as applied to disputed facts is entitled to judicial deference. See *Graham v. Dokter Trucking*

*Group*, 284 Kan. 547, 554, 161 P.3d 695 (2007). If there is a rational basis for the Board's interpretation, we should uphold it. However, the Board's determination on questions of law is not conclusive and, though persuasive, is not binding on us. The Fund bears the burden of proving the impropriety of the Board's interpretation of the statutes. See *Foos v. Terminix*, 277 Kan. 687, 692-93, 89 P.3d 546 (2004).

Subject to certain conditions which do not apply here, K.S.A. 44-567(a) provides that an employer who knowingly employs or retains a handicapped employee is relieved of liability for compensation awarded or is entitled to an apportionment of the costs paid from the Fund. For the statute to apply, IBP must prove either that it had knowledge of the preexisting impairment at the time it hired Quandt or that it retained Quandt as an employee after learning of her impairment and before the accident. See K.S.A. 44-567(b); *Guerrero v. Dold Foods, Inc.*, 22 Kan. App. 2d 53, 58, 913 P.2d 612 (1995).

Quandt went to work for IBP in 1985. She reported on her job application that she had carpal tunnel syndrome, prior neck surgery, and a bad knee. She had experienced several injuries in the past, resulting in knee surgeries, a knee replacement, and a cervical fusion. She did not report any prior back problem. She had not suffered any injury to her lower back and had never seen a doctor for treatment of her lower back before working for IBP.

Quandt's claim arose out of an incident on March 26, 1993, in which she slipped on a piece of fat and fell on her knee. The fall reinjured her knee and aggravated her cervical condition. She first experienced discomfort in her lower back about a month after the accident. Quandt continued to work at IBP until May 1993. She eventually required further neck surgery. In Quandt's original award in 1997, her benefits were assessed against the Fund since IBP had hired Quandt with knowledge of her preexisting neck and knee conditions.

The issue of responsibility for benefits for Quandt's back condition arose in the review and modification proceedings. Since an award made in the review and modification proceedings under K.S.A. 44-528 constitutes an entirely new award (see *Ratzlaff*, 200

Kan. at 433; *Brandt*, 19 Kan. App. 2d at 1101), the burden re-
mained on IBP to establish a basis for shifting responsibility for
Quandt's back injury to the Fund. While IBP was able to shift
liability to the Fund for Quandt's neck and knee injuries by show-
ing that it hired Quandt knowing of her prior neck and knee in-
juries, to shift the responsibility to the Fund for Quandt's new back
award, IBP was required to make a similar showing. IBP made no
such showing.

IBP's reliance on *Jackson v. Stevens Well Service*, 208 Kan. 637,
493 P.2d 264 (1972), does not advance its cause. The court stated
in *Jackson* that "every natural consequence that flows from the
[compensable] injury, including a new and distinct injury, is com-
pensable if it is a direct and natural result of a primary injury." 208
Kan. at 643. *Jackson* did not involve the Fund. The Fund's liability
for Quandt's back injury is derivative and only becomes primary
upon IBP satisfying the requirements of K.S.A. 44-567. See
*Brandt*, 19 Kan. App. 2d at 1100. The principle expressed in *Jack-
son* imposes liability on IBP for Quandt's back injury unless IBP
can establish grounds for shifting that liability to the Fund.

Here, the Board assessed liability for Quandt's back condition
to the Fund when there had been no showing that IBP satisfied
the liability-shifting requirements of K.S.A. 44-567. Accordingly,
there is no rational basis for its conclusion that the Fund is liable
for Quandt's lower back condition. We must, therefore, reverse the
Board's order imposing liability for Quandt's lower back condition
on the Fund.

*Is Quandt's Back Claim Compensable Since It Was Not Included
In Her Original Claim?*

Finally, IBP argues that Quandt was not entitled to compensa-
tion for her lower back injury since she was aware of her back injury
before her original award in 1997 and made no claim for it.
Whether an injury is compensable is a question of law over which
we exercise unlimited review. *Coleman v. Swift-Eckrich*, 281 Kan.
381, 383, 130 P.3d 111 (2006).

Since there are no Kansas cases directly on point, IBP relies on
cases from other jurisdictions which stand for the proposition that

when a claimant knows a condition is work-related at the time an action is pending before the ALJ, failure to raise that condition during those proceedings precludes the claimant from later raising it in a review and modification proceeding. See *Scroggins v. Industrial Commission*, 123 Ariz. 35, 597 P.2d 188 (Ct. App. 1979); *Slone v. Jason Coal Co.*, 902 S.W.2d 820 (Ky. 1995); *Finance Oil Co. v. James*, 188 Okla. 372, 109 P.2d 818 (1941).

Crucial to the decisions in *Finance Oil* and *Scroggins* is the fact that the worker's injury in each case was readily apparent from the time of the accident and was ongoing throughout the time the worker's claim was pending. On the other hand, while Quandt experienced some minor discomfort in her back a month after the accident in 1993, it was not enough to cause her to seek medical attention. Her back problem remained dormant for many years after the accident. Quandt's knee injury from the accident caused her to limp. Her altered gait over time aggravated and rendered active her dormant lower back condition. Quandt's original award was in 1997. It was not until late 1998 that her back condition manifested itself to the point of requiring treatment. The evidence suggests that but for Quandt's altered gait, the pain in her lower back would have continued to be inconsequential. Quandt's facts are clearly distinguishable from those in *Finance Oil* and *Scroggins*.

In the third case cited by IBP, *Slone*, the employee filed both workers compensation and social security disability claims following his injuries. He claimed a mental condition as one of the grounds for his social security claim, but did not raise the issue of his mental condition in his workers compensation claim. Thus, as in *Finance Oil* and *Scroggins*, the worker was well aware of his mental condition when he pursued his workers compensation claim.

*Slone* was distinguished in *Ford v. Keener*, 2004 WL 1176259, at *1 (Ky. App. 2004) (unpublished opinion). In *Ford*, the employee suffered from depression shortly after his injury, but the condition did not progress to the point of requiring treatment until 6 years later. While the employee had some depression at the time of the original award, there was no medical evidence that he had a psychiatric condition that needed medical treatment or warranted

an impairment rating. Quandt's case fits the mold of *Ford* rather than *Slone*. Accordingly, the Board did not err in granting Quandt post-award compensation for her back injury.

Affirmed in part, reversed in part, and remanded for modification of award regarding liability of the Fund consistent with this opinion.