(207 P.3d 275)
No. 100,012

CORY SAYLOR, *Appellee*, v. WESTAR ENERGY, INC., *Appellant*.

Opinion filed May 22, 2009.

*Terry J. Torline*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, for appellant.

*Chris A. Clements*, of Clements Law Office, of Wichita, for appellee.

Before RULON, C.J., ELLIOTT and HILL, JJ.

HILL, J.: In Kansas, the law allows a worker injured from repetitive use or cumulative trauma, to designate the date of his or her accident as the date on which the employee gives written notice to the employer of the injury. In this appeal, the employer, Westar Energy, Inc., argues that it should not have to pay benefits to its employee, Cory Saylor, because on the date of the accident in his case, Saylor was home recuperating from knee surgery and not working. Our Workers Compensation Act directs the elements of an accident are not to be construed in a strict or literal sense but rather in a manner designed to effectuate the purpose of the Act which is that an employer bears the expense of accidental injury. Therefore, we hold the Workers Compensation Board did not err by ruling the date of the accident was the day Saylor gave notice of injury to Westar. We affirm.

*The case history reveals a chronic degenerative knee condition, which was aggravated by work.*

Cory Saylor suffered from a degenerative condition in his left knee, which was aggravated by his job duties at Westar. In February 2006, Saylor's condition worsened to the point that he needed knee replacement surgery. After telling his supervisor that his knee injury was work-related, Saylor took leave from Westar under the Family Medical Leave Act. His last day at work was February 6, 2006. He had surgery the next day. While recovering from surgery, Saylor became aware that his injury could qualify under the Workers Compensation Act as an "accident." Following up on that information, Saylor issued his notice of intent to file a workers compensation claim to Westar, which Westar received on March 28, 2006.

The administrative law judge (ALJ) found that Saylor's knee injury qualified as an accident under the Workers Compensation Act. Based on the stipulation of the parties, the ALJ further found that Saylor's date of injury for assessing compensation was March 28, 2006. Finally, the ALJ ruled that Westar was liable for all medical costs associated with Saylor's knee replacement treatment. Westar appealed.

In a 3-2 concurring decision, the Workers Compensation Board upheld the ALJ's rulings. Three of the Board members ruled the date of the accident was the day Saylor gave notice to Westar, March 28, 2006. Two of the Board members thought the date of Saylor's accident should be his last day of work, February 6, 2006. The minority thought Saylor's notice was timely because it fell within the 75-day time limit since Saylor had just cause to delay reporting the accident due to his ignorance of the workers compensation procedures. All of the Board concurred in the substantive result.

To us, Westar argues that Saylor could not have been injured on the job since he was actually at home recuperating from knee surgery on the date of the accident. The employer also contends Saylor did not give timely notice in order to preserve his workers compensation claim. Finally, Westar states that it should not be re-

sponsible for the medical bills associated with the knee replacement surgery since the procedure was not authorized. We will deal with the issues in that order.

*We conclude Saylor's injury arose in the course of his employment.*

We note first that Westar does not challenge the Board's factual findings that Saylor's duties as a groundsman, truck driver, and cable splicer caused him to suffer a repetitive use injury to his left knee. Instead, Westar questions only the Board's interpretation of K.S.A. 2008 Supp. 44-508(d). Because it was uncontroverted that Saylor was at home recovering from knee surgery on March 28, 2006, Westar claims Saylor could not have sustained an injury "in the course of" his employment on that date. Therefore, Westar requests this court to adopt the interpretation of the Board's minority that concluded Saylor's date of accident was Saylor's last day at work.

We pause to mention our standard of review. Interpretations of statutory provisions in the Workers Compensation Act are questions of law. Under the doctrine of operative construction, the Board's interpretation of the law is entitled to judicial deference. If there is a rational basis for the Board's interpretation, it should be upheld upon judicial review. However, the Board's determination on questions of law is not conclusive and, though persuasive, is not binding on the court. *Casco v. Armour Swift-Eckrich*, 283 Kan 508, 521, 154 P.3d 494 (2007). The party challenging the Board's interpretation bears the burden of proving its invalidity. *Foos v. Terminix*, 277 Kan. 687, 693, 89 P.3d 546 (2004). Obviously, Westar bears that burden here.

The pertinent statute here is K.S.A. 2008 Supp. 44-508(d). We examine three portions of that law. The first section provides that an accident "means an undesigned, sudden and unexpected event or events, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force." K.S.A. 2008 Supp. 44-508(d). We note that in the next provision, the legislature has given guidance about the interpretation of this rule. The statute provides the "elements of an accident, as stated herein are not to be construed in a strict and literal sense, but in

a manner designed to effectuate the purpose of the Workers Compensation Act that the employer bear the expense of accidental injury to a worker caused by the employment." K.S.A. 2008 Supp. 44-508(d).

The next provision of K.S.A. 2008 Supp. 44-508(d) sets out the rule concerning repetitive injuries:

> "In cases where the accident occurs as a result of a series of events, repetitive use, cumulative traumas or microtraumas, the date of accident shall be the date the authorized physician takes the employee off work due to the condition or restricts the employee from performing the work which is the cause of the condition. In the event the worker is not taken off work or restricted as above described, then the date of injury shall be the earliest of the following dates: (1) The date upon which the employee gives written notice to the employer of the injury; or (2) the date the condition is diagnosed as work related, provided such fact is communicated in writing to the injured worker. In cases where none of the above criteria are met, then the date of accident shall be determined by the administrative law judge based on all the evidence and circumstances; and in no event shall the date of accident be the date of, or the day before the regular hearing. Nothing in this subsection shall be construed to preclude a worker's right to make a claim for aggravation of injuries under the workers compensation act."

A review of the facts is useful here. On January 4, 2006, referred by his family physician, Saylor visited Dr. Schurman who recommended that he undergo knee replacement surgery. Saylor alleged he then informed his new supervisor, Raymond Lara, of the surgery and of his belief that his job duties were causing his knee pain. Saylor, however, did not complete any paperwork indicating that fact. Instead, Saylor continued to work up through February 6, 2006.

On February 7, 2006, Saylor underwent knee replacement surgery. At the time of that surgery, Saylor was 53 years old. After his knee replacement, on February 24, 2006, Saylor filled out the Family Medical Leave Application form requesting leave until April 3, 2006. On his Family Medical Leave Application form, Saylor marked that his knee replacement was not a work-related injury. At the time he marked this statement, Saylor later alleged he believed his injury to be work-related but was unaware of the process involving workers compensation claims. Due to this alleged unawareness, Saylor submitted all the medical bills related to his sur-

gery and treatment of his left knee to his own health insurance carrier.

While at the hospital recovering, a journeyman from Westar informed Saylor that a fellow worker wanted to talk to Saylor. Saylor talked with the worker and discovered he could claim workers compensation benefits for his knee injury. Consequently, Saylor hired an attorney and in a letter dated March 27, 2006, Saylor provided written notice of intent to Westar, claiming:

"1) Payment of temporary total disability benefits through the time claimant is released by the physician.
"2) Authorized medical treatment.
"3) Payment of bills from treating physicians and referrals."

On March 28, 2006, Westar received Saylor's notice of intent. That same day, Saylor filed a claim under the Kansas Workers Compensation Act. In his application, Saylor asserted that (1) the date of his accident/disease was a "[s]eries through 2/6/06"; (2) the source of his accident/disease was "[r]epetitive use"; and (3) his injury involved his "[l]eft knee." Westar is a self-insured employer. On April 4, 2006, Saylor's attorney certified that "[s]even (7) days have passed since the request for benefits and notice of intent were submitted, and benefits have either been denied or there has been no response to the request for benefits." Therefore, Saylor filed his application for preliminary hearing accompanied with a copy of the notice of intent and his certification that the notice of intent was served on Westar.

On April 10, 2006, Saylor returned to light-duty work at Westar. On September 27, 2006, Dr. Schurman released Saylor to his previous job duties.

*We give our view of the Act.*

In order to address repetitive use injuries, the legislature in 2005 modified the definition of "accident" in the Workers Compensation Act. The old provision did not provide language dictating the date of injury for an "accident." Instead, case law established a bright-line rule for identifying the date of injury in repetitive use cases as the last day worked prior to the hearing date. See, *e.g.,*

*Kimbrough v. University of Kansas Med. Center*, 276 Kan. 853, 855, 857, 79 P.3d 1289 (2003).

When the legislature revises an existing law, the court presumes that the legislature intended to change the law as it existed prior to the amendment. *State v. McElroy*, 281 Kan. 256, 263, 130 P.3d 100 (2006). Furthermore, "[w]hen a statute is plain and unambiguous, a court must give effect to its express language, rather than determine what the law should or should not be." *Graham v. Dokter Trucking Group*, 284 Kan. 547, Syl. ¶ 3, 161 P.3d 695 (2007); *Casco*, 283 Kan. 508, Syl. ¶ 6.

In this case, the 2005 addition to K.S.A. 2008 Supp. 44-508(d) creates the presumption that the legislature intended to change the date of injury for an "accident" from the bright-line rule of the last day worked. Therefore, giving effect to the express language in K.S.A. 2008 Supp. 44-508(d), which is plain and unambiguous, we find Saylor's date of injury to be March 28, 2006.

As the Board noted, the date of injury is "necessary in order to set the appropriate compensation rate and determine such issues as whether there was timely notice and timely written claim." Westar argues that the majority's view of the statute is illogical and absurd. We disagree. It appears the majority's interpretation is reasonable and complies with the legislature's caution that the elements of accident are not to be interpreted in a strict and literal sense. The Board's interpretation promotes the purpose of the Workers Compensation Act and should be given deference.

*The notice given by Saylor was timely.*

The law states that to preserve a claimant's claim under the Act, K.S.A. 44-520 requires notice to be given within 10 days after the date of the accident unless just cause exists to extend the reporting time to 75 days. Because we agree with the majority's holding we hold that Saylor's notice was given in a timely manner. Saylor gave notice on the day of the accident.

*Westar is responsible for the medical expenses as the Board ruled.*

Here, the Board relied upon K.S.A. 44-510j(h) in finding that Westar was responsible for medical costs associated with Saylor's

left knee replacement, even though Dr. Schurman was not authorized by Westar to perform the surgery. Westar disputes this ruling, arguing that it did not authorize Saylor's medical treatment prior to March 28, 2006. They make two arguments.

*First,* Westar alleges the evidence showed that Saylor did not notify Westar that his knee condition was work-related before his surgery. *Second,* Westar asserts that Saylor failed to make a request for Westar to pay his medical bills in accordance with K.S.A. 44-534a(a). Therefore, Westar claims it should only be responsible for $500 in unauthorized medical costs in accordance with K.S.A. 2008 Supp. 44-510h(b)(2).

An appellate court's review of questions of fact in a workers compensation case is limited to whether, when reviewing the record as a whole, the Board's findings of fact are supported by substantial evidence, which is a question of law. *Casco,* 283 Kan. at 514 (relying on K.S.A. 77-621[c]).

The statute, K.S.A. 2008 Supp. 44-510h(a) requires "the employer to provide the services of a health care provider, and such medical, surgical and hospital treatment . . . as may be reasonably necessary to cure and relieve the employee from the effects of the injury." "Without application or approval, an employee may consult a health care provider of the employee's choice for the purpose of . . . treatment, but the employer shall only be liable for the fees and charges of such health care provider up to a total amount of $500." See K.S.A. 2008 Supp. 44-510h(b)(2). But, if the employer has knowledge of the injury and refuses or neglects to reasonably provide the services of a health care provider, the employee may obtain medical treatment and the employer is liable for such expenses. K.S.A. 44-510j(h).

"When an employer's insurance carrier or a self-insured employer disputes all or a portion of a bill for services rendered for the care and treatment of an employee under this act, the following provisions apply:

. . . .

"(h) . . . If the employer has knowledge of the injury *and* refuses or neglects to reasonably provide the services of a health care provider required by this act, the employee may provide the same for such employee, and the employer shall be liable for such expenses subject to the regulations adopted by the director." (Emphasis added.) K.S.A. 44-510j(h).

Saylor testified that he informed his supervisor, Raymond Lara, that he needed a knee replacement surgery and that his knee injury was related to his job duties. Raymond Lara disputed Saylor's testimony, stating that Saylor only informed him that he needed leave for knee surgery. Nevertheless, Saylor contradicted his own testimony when on his Family Medical Leave Application, Saylor asserted his knee injury was not work-related. However, Saylor justified this action, claiming that he lacked the knowledge on the process of reporting work-related injuries. Regardless, evidence was presented that Westar had provided Saylor with training about reporting work-related injuries. Based on this evidence, the Board found Saylor's testimony more credible than Raymond Lara and applied K.S.A. 44-510j(h), holding that Westar had knowledge of Saylor's left knee injury and Saylor's need for medical treatment but neglected to provide him with a health care provider.

Substantial evidence in a workers compensation case is evidence that possesses something of substance and relevant consequence that induces the conclusion that the award is proper. It furnishes a basis of fact from which the issue raised can be reasonably resolved. Appellate courts review the evidence in the light most favorable to the prevailing party and do not reweigh competing evidence or assess credibility of the witnesses. Thus, even though other evidence in the record would have supported contrary findings, if supported by substantial evidence, the Board's findings will be upheld. *Graham*, 284 Kan. at 553-54.

Viewing the evidence presented in the light most favorable to the prevailing party and declining to reweigh competing evidence or assess credibility of witnesses, this court should uphold the Board's findings. Substantial competent evidence exists to show that prior to his surgery on February 7, 2006, Saylor notified Westar through his supervisor that his knee condition was work-related. After receiving this information, Raymond Lara did not follow up on this issue by reporting the injury, even though it can be assumed that he also attended the same work-related training as Saylor. Thus, by not following up on Saylor's comments, which armed it with the knowledge of Saylor's work-related injury to his

left knee, Westar neglected to provide Saylor with medical treatment.

Westar's second argument is also unpersuasive. K.S.A. 44-534a(a)(1) permits an employer or employee to seek a preliminary hearing regarding medical treatment and the payment of temporary total disability compensation before the issuance of a final award. *Quandt v. IBP*, 38 Kan. App. 2d 874, Syl. ¶ 1, 173 P.3d 1149 (2008). But, the record indicates that from Saylor's date of injury of March 28, 2006, Saylor fully complied with K.S.A. 44-534a(a)(1). Thus, it appears that Westar is disputing the medical treatment that Saylor received prior to his date of injury on the basis that Saylor "could . . . have easily delayed surgery until the workers compensation procedure was followed and a decision was made by the ALJ." But Westar had knowledge of Saylor's knee injury in February but neglected to provide him with medical treatment. Consequently, because K.S.A. 44-510j(h) applies, we uphold the Board's findings on this matter.

Affirmed.