No. 100,012

CORY SAYLOR, *Appellee,* v. WESTAR ENERGY, INC., *Appellant.*

(256 P.3d 828)

Opinion filed August 5, 2011.

*Terry J. Torline,* of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, argued the cause and was on the briefs for appellant.

*Chris A. Clements,* of Clements Law Office, of Wichita, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Westar Energy, Inc. (Westar) seeks review of the Court of Appeals' decision affirming the workers compensation award to Cory Saylor in connection with a knee injury in *Saylor v. Westar Energy, Inc.*, 41 Kan. App. 2d 1042, 207 P.3d 275 (2009). Westar essentially challenges the date of accident assigned to Saylor's repetitive trauma injuries and contends that it should not have been ordered to pay for unauthorized medical expenses. We affirm the Court of Appeals' decision affirming the Workers Compensation Board (Board).

## FACTS AND PROCEDURAL BACKGROUND

At the time of the hearing before the administrative law judge (ALJ), Saylor was 54 years old and had been employed by Westar for 33 years, variously serving as a grounds man, truck driver, cable splicer, journeyman cable splicer, and foreman cable splicer. In the foreman position, Saylor supervised a 3-man crew that ran power cables through residential and commercial buildings. His job duties required him to work on his knees on rough ground and asphalt, to climb in and out of manholes, and to climb up and down ladders.

Saylor testified that, approximately 20 years ago, he injured his left knee on the job and underwent a procedure to repair torn cartilage. However, he did not report the injury as work related because he did not know to do so. Several years ago, he experienced pain in his left knee that became progressively worse. Saylor's family physician referred him to Dr. Steven Howell for cortisone injections. Saylor recalled reporting the trouble with his knee and the injection treatments to his supervisor at the time, Pinky Nelson, albeit Saylor did not fill out any paperwork.

More recently, Saylor experienced worsening pain in his knee, resulting in a referral to Dr. John R. Schurman. On January 4, 2006, Saylor consulted with Dr. Schurman, who recommended knee replacement surgery. Saylor stated that he informed his supervisor, Raymond Lara, that he was going to have knee replacement surgery and that his job duties caused the injury, but his supervisor did not have him fill out any paperwork. Lara would later testify in deposition that he first learned of Saylor's left knee

pain when Saylor asked for time off to have the surgery and that Saylor referred to the problem as wear and tear over the years, rather than as work related. On his application for leave time, Saylor checked the box indicating the injury was not work related, which he would later explain was done because he did not know that the injury could be covered by workers compensation.

Saylor's last date worked prior to the surgery was February 6. His February 7 surgery was not authorized by Westar, and his personal health insurance paid the medical bills.

While recovering from the surgery, Saylor learned from a co-worker that his knee injury might be considered work related and, thus, eligible for workers compensation. Saylor then sought the advice of a workers compensation attorney, who served a notice of intent and written claim on Westar on March 28, 2006.

In addition to Lara's deposition, Westar presented the deposition of its manager of safety and training, Joe Drassen. Drassen testified that Saylor had received the manual and attended training sessions related to reporting accidents and injuries to a supervisor. Dr. Schurman and Dr. C. Reiff Brown testified by deposition regarding causation. Ultimately, the ALJ determined that Saylor's injury was work related and that the date of accident was March 28, 2006—the date Saylor provided notice to Westar. See K.S.A. 2010 Supp. 44-508(d). The ALJ found that Saylor had 37% impairment to his left leg; that he was entitled to all his outstanding and unauthorized medical benefits; and that he should be awarded 74 weeks of permanent partial disability compensation in the amount of $34,558.

The Board affirmed the ALJ's award, finding that Saylor's injury was work related and arose out of and in the course of his employment with Westar. The Board further found that Saylor provided Westar with timely notice under 44-508(d), concluding that, since there was no authorized physician in this case, the date of accident was the notice date of March 28. Finally, the Board found that Westar was liable under K.S.A. 44-510j(h) for Saylor's unauthorized medical expenses because Westar knew about the work-related injury but failed to provide medical treatment for Saylor.

Two members of the Board wrote a separate concurring opinion, stating that the date of accident should be Saylor's last date worked, February 6, 2006, instead of the date of notice of claim, March 28. Nevertheless, the concurring members opined that the notice was not untimely under K.S.A. 44-520 because there was just cause to extend the notice deadline from 10 days to 75 days.

Westar appealed to the Court of Appeals, which affirmed the decision of the Board's majority. The panel specifically held that, pursuant to the plain and unambiguous language of 44-508(d), Saylor's date of injury was March 28, 2006; that Saylor's notice of accident was timely; and that Westar was responsible for the entire amount of Saylor's medical bills. *Saylor*, 41 Kan. App. 2d at 1048-51. Westar filed a petition with this court, seeking review on three issues, which it stated as follows:

"1. Did the Court of Appeals fail to address whether substantial and competent evidence existed to establish that claimant sustained a personal injury by accident that arose out of and in the course of his employment on March 28, 2006?

"2. Did the Court of Appeals misinterpret K.S.A. §44-508(d) and thereby defeat the purpose of the notification provisions and eliminate statutory defenses of the Kansas Workers Compensation Act?

"3. Did the Court of Appeals fail to consider contrary precedent set by the Kansas Supreme Court, as well as other panels of the Court of Appeals, when interpreting K.S.A. §44-510j(h) to find Westar obligated to pay medical bills incurred by the claimant without Westar's authorization?"

We granted the petition for review and assumed jurisdiction pursuant to K.S.A. 60-2101(b). We agree with the panel's statutory interpretation and affirm the Court of Appeals' decision.

## DATE OF INJURY

Westar's first two issues concern the date of accident assigned to Saylor's repetitive use injury. First, Westar contends that March 28, 2006, is a factually unsupportable date of accident because Saylor did not physically work on that date; he was at home convalescing from the surgery to correct the knee injury. Next, Westar complains that the Court of Appeals' interpretation of K.S.A. 2010 Supp. 44-508(d) defeats the purpose of the notification provisions in the Workers Compensation Act, eliminates an employer's statutory defenses, and will lead to absurd and illogical results.

*Standard of Review*

Final orders of the Workers Compensation Board are subject to review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq.*, under K.S.A. 44-556(a). The standard of review will vary depending on the issue raised. See K.S.A. 77-621. Moreover, we apply the standard of review which was in force at the time of the agency action being reviewed. See K.S.A. 77-621(a)(2); *Mitchell v. Petsmart, Inc.*, 291 Kan. 153, 172, 239 P.3d 51 (2010).

At the time of the Board's order in this case, K.S.A. 77-621(c)(7) provided for judicial relief if the agency action was "based on a determination of fact, made or implied by the agency, that is not supported to the appropriate standard of proof by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act." *Cf.* K.S.A. 2010 Supp. 77-621(c)(7), (d) (amended in 2009; not applicable to this case). "Caselaw defines substantial evidence as evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis to act from which the issue raised could be easily resolved." *Mitchell*, 291 Kan. at 172 (citing *Graham v. Dokter Trucking Group*, 284 Kan. 547, 553-54, 161 P.3d 695 [2007]). We review the evidence in the light most favorable to the prevailing party and do not reweigh competing evidence or assess credibility of witnesses. Thus, we will uphold the Board's decision if it is supported by substantial evidence, even though there is other evidence in the record supporting contrary findings. *Graham*, 284 Kan. at 553-54.

Further, we may grant relief if we determine that the agency erroneously interpreted or applied the law or if the agency action is otherwise unreasonable, arbitrary, or capricious. K.S.A. 77-621(c)(4), (8). Here, Westar contends the Board and the Court of Appeals misinterpreted K.S.A. 2010 Supp. 44-508(d). We need not give deference to an agency's interpretation of a statute, but rather we exercise our own unlimited review. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 567, 232 P.3d 856 (2010).

*Analysis*

In its first issue, Westar does not dispute that evidence was presented to support the finding that Saylor's knee injury was related to his job duties, such as being on his knees for long periods of time, walking on rough ground, climbing in and out of manholes and transformer vaults, and climbing up and down ladders. Instead, Westar argues that there was no evidence to support the factual determination that Saylor suffered a personal injury by accident that arose out of and in the course of his employment on March 28, 2006. It asserts that the evidence contradicted that accident date, because on March 28, Saylor was not physically on the job; he was home recovering from his knee surgery.

The fallacy with Westar's argument is that the designation of an accident date in a repetitive use case is not a factual determination of the precise moment at which the claimant suffered the personal injury. By definition, in such cases "the accident occurs as a result of a series of events, repetitive use, cumulative traumas or microtraumas." K.S.A. 2010 Supp. 44-508(d). Accordingly, the assignment of any single date as the "accident date" for a repetitive use/cumulative traumas injury is inherently artificial and represents a legal question, rather than a factual determination.

Prior to 2005, this court dealt with the dilemma of identifying a date of injury in repetitive, microtrauma cases by designating the last day the employee worked for the employer as the accident date. See *Kimbrough v. University of Kansas Med. Center*, 276 Kan. 853, 855, 79 P.3d 1289 (2003) (established bright-line rule in Kansas that the date of injury is the last day worked). In 2005, the legislature addressed the subject in an amendment to K.S.A. 2010 Supp. 44-508(d), which now states:

"(d) 'Accident' means an undesigned, sudden and unexpected event or events, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. The elements of an accident, as stated herein, are not to be construed in a strict and literal sense, but in a manner designed to effectuate the purpose of the workers compensation act that the employer bear the expense of accidental injury to a worker caused by the employment. *In cases where the accident occurs as a result of a series of events, repetitive use, cumulative traumas or microtraumas, the date of accident shall be the date the authorized physician takes the employee off work due to the condition or*

*restricts the employee from performing the work which is the cause of the condition. In the event the worker is not taken off work or restricted as above described, then the date of injury shall be the earliest of the following dates: (1) The date upon which the employee gives written notice to the employer of the injury; or (2) the date the condition is diagnosed as work related, provided such fact is communicated in writing to the injured worker. In cases where none of the above criteria are met, then the date of accident shall be determined by the administrative law judge based on all the evidence and circumstances; and in no event shall the date of accident be the date of, or the day before the regular hearing."* L. 2005, ch. 55, sec. 1.

The Court of Appeals found the legislative directive on determining the date of accident in a repetitive use scenario to be plain and unambiguous. *Saylor*, 41 Kan. App. 2d at 1048. We agree. The statute lays out an easy-to-follow progression. First, "the date of accident shall be the date the authorized physician takes the employee off work due to the condition or restricts the employee from performing the work which is the cause of the condition." K.S.A. 2010 Supp. 44-508(d). Only if the worker was not taken off work or restricted by an authorized physician does one move on to the next formulation, which is the earliest of two dates: (1) the date the employee gives the employer written notice of the injury; or (2) the date the condition is diagnosed as work related, if that fact is communicated in writing to the injured worker. Finally, if none of those criteria apply, the ALJ determines the date of accident based on all the evidence and circumstances. See K.S.A. 2010 Supp. 44-508(d).

Ordinarily, if a statute's language is not subject to multiple interpretations, the reviewing court need not look past that language. See *In re K.M.H.*, 285 Kan. 53, 79, 169 P.3d 1025 (2007), *cert. denied* 129 S. Ct. 36 (2008) (when statutory language plain and unambiguous, appellate court need not resort to statutory construction rules); *cf. Robinett v. The Haskell Co.*, 270 Kan. 95, 100-01, 12 P.3d 411 (2000) (Where a statute's language is subject to multiple interpretations, however, a reviewing court "may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect that statute may have under the various constructions suggested."). Rather, an appellate court is bound to implement the legislative

intent which has been expressed in the legislature's plain and unambiguous language. See *State v. Manbeck*, 277 Kan. 224, Syl. ¶ 3, 83 P.3d 190 (2004).

Here, Westar does not contend that the language employed by the legislature in K.S.A. 2010 Supp. 44-508(d) is unclear, equivocal, or ambiguous in stating that, under the facts of this case, the date of accident shall be the date Saylor gave written notice of injury to Westar. Rather, Westar suggests that we must not take the legislature literally, because a plain reading of the statute that assigns a date of accident that is after the last day the worker engaged in the employment activities that caused or aggravated the repetitive trauma condition would lead to absurd and illogical results.

Specifically, Westar warns that a literal interpretation would defeat the very purposes of the notification provisions of the Workers Compensation Act, which purposes Westar believes to be to afford the employer an opportunity to investigate the accident and to furnish prompt medical treatment. Further, Westar complains that such an interpretation will eliminate the employer's notice and timely written claim defenses for virtually all repetitive trauma injuries. Moreover, Westar points out that the compensation rate under the Act is based upon a worker's average weekly wage, which is calculated based upon the worker's wages on the date of accident. Therefore, if the date of accident falls on a day that the claimant did not work, the claimant's compensation rate under the Act is either incalculable or the worker is simply not entitled to compensation because he or she had no wages on the date of accident.

As a legal pathway for us to travel to arrive at its desired statutory interpretation, Westar propounds several maxims dealing with reasonableness. Citing to *Pruter v. Larned State Hospital*, 271 Kan. 865, 874, 26 P.3d 666 (2001), Westar admonishes us that courts must avoid statutory interpretations that would lead to absurd or unreasonable results. Citing to *Employers Reinsurance Corp. v. Kansas Ins. Comm'r*, 271 Kan. 253, 260, 21 P.3d 505 (2001), Westar contends that we must presume that the legislature intends that its enactments be given a reasonable construction, so as to avoid unreasonable results, and that we should reconcile the dif-

ferent provisions of the act so as to make them consistent, harmonious, and sensible. Moreover, Westar reminds us of the presumption that the legislature does not intend to enact useless or meaningless legislation. See *Ruddick v. Boeing Co.*, 263 Kan. 494, 500, 949 P.2d 1132 (1997).

Then, without citing to legislative history or any other source, Westar offers its opinion that the 2005 changes to 44-508 were made to supplement the judicially created, bright-line, last-day-worked rule, and that the changes were designed to allow the date of accident to be on a date prior to the last day worked, if one of the various conditions were shown to exist. However, Westar affirmatively asserts that the legislative changes were never intended to permit a date of accident which was after the last day worked.

To get where Westar wants us to go, we would have to speculate that the legislature intended to incorporate the last-day-worked rule into K.S.A. 2010 Supp. 44-508(d)'s date-of-accident formulation and then read that provision into the statute when it is not readily found there. We have said that we will not do that, especially when a workers compensation statute is plain and unambiguous. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607-08, 214 P.3d 676 (2009) (citing *Graham*, 284 Kan. at 554); see *Casco v. Armour Swift-Eckrich*, 283 Kan. 508, 521, 154 P.3d 494 (2007).

Moreover, the pitfall in using the reasonableness maxims to interpret a statute contrary to its plain language is that occasionally we have evidence that the legislature intentionally enacted a provision after being informed of potential consequences which some might view as unreasonable. This is such a case. The legislative history reveals that the legislature was informed of the potential results which Westar now dubs absurd, illogical, and unreasonable, but it chose to enact the statute anyway, without changing the plain language. So long as it remains within constitutional boundaries, the legislature has the authority to intentionally and knowingly enact statutory provisions that may lead to unreasonable results. In that event, a judicial rewriting of the statute is not the appropriate remedy.

The 2005 amendment to K.S.A. 2010 Supp. 44-508(d) was part of Substitute H.B. 2142. The original version of the bill stated as follows:

"In cases where the accident occurs as a result of a series of events, repetitive use, cumulative traumas or microtraumas, the date of accident shall be the earliest of the following dates: (1) The date upon which the employee gives written notice to the employer of the injury; (2) the date the condition is diagnosed as work-related, providing such fact is communicated in writing to the injured worker; or (3) the first day the authorized physician takes the employee off work due to the condition or restricts the employee from performing the work which is the cause of the condition." H.B. 2142.

The House Commerce and Labor Committee specifically considered the "date of accident" portion of the amendment and received testimony from an administrative law judge, Bruce E. Moore. Judge Moore testified that, from the courts' perspective, no one approach to the date of accident was better than another. "Any approach would be somewhat arbitrary where the precise date of injury is unknown. However, the date of accident is not something that should be susceptible to manipulation by either party, either to increase or decrease the benefits due, or to shift liability between carriers." Minutes, House Commerce and Labor Comm., February 7, 2005. Judge Moore reviewed the different approaches taken by Kansas courts to determine the date of accident in repetitive use injuries, recognizing the "last day worked" rule and the ways it had been applied in recent cases. He noted that H.B. 2142 proposed to change the way that the date of accident was determined, pointing out that the first two alternatives— written notice to the employer and the date the condition was diagnosed as work related—were subject to manipulation, while the third alternative stopped short of the last-day-worked rule.

Ironically, Judge Moore specifically discussed two consequences which Westar now relies on to establish unreasonableness, *i.e.*, the impact on the notification provisions and on the calculation of benefits. After pointing out that K.S.A. 44-520 requires a worker to give notice of an accident within 10 days of its occurrence unless he or she had just cause to extend that period to 75 days, Judge Moore opined that, under the proposed language, if the accident

date was established by the claimant's notice to the employer, K.S.A. 44-520 would effectively cease to apply in repetitive use claims. Also, Judge Moore pointed out to the committee that the right to monetary benefits accrues on the date of accident, and the wage in effect on that date determines the benefit rate at which workers compensation benefits are paid. See K.S.A. 44-535; K.S.A. 2010 Supp. 44-511.

After hearing testimony throughout the next month, the committee appointed a subcommittee to develop recommendations regarding the bill. The subcommittee resolved to substitute the present language of K.S.A. 2010 Supp. 44-508(d) for the original language. The House passed the substituted bill on February 24, 2005, and the Senate passed the substitute for H.B. 2142 on March 24. House J. 2005, p. 242. Sen. J. 2005, p. 395; see L. 2005, ch. 55, sec. 1. Pointedly, the substituted language did not mention the last-day-worked rule and did not correct the potential consequences of which Judge Moore warned in his committee testimony.

With that legislative history, we do not need to employ the presumption that the legislature knew the existing law when it amended 44-508(d); we know that it was explicitly told of the last-day-worked rule. See *State v. Spencer*, 291 Kan. 796, 825, 248 P.3d 256 (2011) (citing *Hawley v. Kansas Dept. of Agriculture*, 281 Kan. 603, 631, 132 P.3d 870 [2006]) (we presume the legislature knew existing law and intended to change that law with its enactment); *Martin v. Kansas Dept. of Revenue*, 285 Kan. 625, 631-32, 176 P.3d 938 (2008). Moreover, the notion that the legislature expressed its intent through the language of the statutory scheme it enacted is more than a presumption in this case. See *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001) (courts presume legislature expresses its intent with the language employed). Accordingly, we must decline Westar's invitation to change the language of K.S.A. 2010 Supp. 44-508(d) to make the law what Westar argues that it should be or even what we think it ought to be. The Board and the Court of Appeals correctly interpreted and applied K.S.A. 2010 Supp. 44-508(d) as it is written, which results in the assignment of March 28, 2006, as Saylor's date of accident.

Before moving on, we pause to address Westar's argument that our recent decision in *Mitchell*, 291 Kan. 153, upholds the last-day-worked rule notwithstanding the 2005 amendment to 44-508(d). We acknowledge that *Mitchell* contained language suggesting that setting a date-of-accident for repetitive trauma injuries as the worker's last day worked was in agreement with the statutory provisions. However, in that case, we were not asked to interpret the statutory date-of-accident provisions. Rather, the issue involved a dispute between two insurers as to which company would pay for the worker's injuries. The determinative question was whether the worker's injuries were all attributable to a single accident where the worker's left thumb was broken or whether a portion of his injuries were attributable to repetitive traumas suffered after returning to work with the broken thumb. If a portion of the injuries were attributable to repetitive use, then any of the potential dates of accident described in K.S.A. 2010 Supp. 44-508(d) would have been after the insurance company change, *i.e.*, the date-of-accident determination was not critical to the outcome of the issue. Nevertheless, we clarify here that the judicially created last-day-worked rule is no longer the bright-line rule for determining the date of accident in repetitive trauma cases, but rather the provisions K.S.A. 2010 Supp. 44-508(d) shall govern wherever applicable.

## UNAUTHORIZED MEDICAL BILLS

Westar complained that it should not have been responsible for paying all of the medical bills associated with Saylor's knee replacement surgery because it did not authorize the medical treatment. K.S.A. 2010 Supp. 44-510h(b)(2) provides that an employee may consult with any health care provider without application or approval, but that the employer is only liable for fees and charges up to a total amount of $500 for such unauthorized medical services. However, the Court of Appeals found Westar liable for Saylor's unauthorized medical bills under the provisions of K.S.A. 44-510j(h), which states:

"If the employer has knowledge of the injury and refuses or neglects to reasonably provide the services of a health care provider required by this act, the employee

may provide the same for such employee, and the employer shall be liable for such expenses subject to the regulations adopted by the director."

Westar argues that the Court of Appeals interpretation of K.S.A. 44-510j(h) is contrary to the statutory framework of the Workers Compensation Act and conflicts with prior appellate decisions.

*Standard of Review*

To the extent our decision is based upon an interpretation of the meaning of K.S.A. 44-510j(h), or any other statute, our review is unlimited, and we need not give any particular deference to the Board's interpretation of the statute. *Kansas Dept. of Revenue*, 290 Kan. at 567. Where the result turns on a factual finding, we will uphold the Board's decision if it is supported by substantial evidence, even though there is other evidence in the record supporting contrary findings. *Graham*, 284 Kan. at 554.

*Analysis*

Westar contends that the Court of Appeals misinterpreted K.S.A. 44-510j(h) because the panel apparently did not comprehend or appreciate the procedural workings of the Workers Compensation Act. Interestingly, the Court of Appeals panel was reviewing the Board's decision to apply K.S.A. 44-510j(h), and one might assume that the Board would comprehend and appreciate the procedural workings of the Act which it is charged with enforcing.

Nevertheless, Westar's petition for review offers its explanation that the Act contemplates that the employer will select the medical care provider for an injured worker. If the employee does not obtain the appropriate authorization to use a particular health care provider, the maximum liability of the employer is $500 under K.S.A. 2010 Supp. 44-510h(b)(2). Moreover, Westar opines that if an employee wants benefits that the employer has not voluntarily provided, then the worker must follow the procedures set forth in K.S.A. 44-534a(a), *i.e.*, serve written notice of intent on the employer, followed by the filing of a certification at least 7 days later, followed by an application for preliminary hearing. Westar asserts that the few cases which have considered K.S.A. 44-510j(h) have

only applied its provisions to hold the employer liable for unauthorized medical bills where the worker received emergency medical treatment that precluded his or her ability to follow the K.S.A. 44-534a(a) procedure. In other words, Westar contends that K.S.A. 44-510j(h) only applies to emergency medical services.

Again, Westar asks us to rewrite a seemingly straight-forward statute to comport with what it believes the law should be. K.S.A. 44-510j(h) says nothing about medical emergencies; it makes no reference to the procedures set forth in K.S.A. 44-534a(a). Moreover, the fact that the few cases citing K.S.A. 44-510j(h) involved medical procedures which had to be performed without delay does not mean that employer liability has been judicially restricted to emergency medical services. To the contrary, the statute clearly conveys the message that if Westar knew that its employee was suffering from a work-related injury and refused or neglected to provide medical services to address that injury, the employee was permitted to provide his or her own doctor at Westar's expense. Moreover, that plain reading of the statute comports with K.S.A. 2010 Supp. 44-508(d)'s expression of the purpose of the Workers Compensation Act, which is "that the employer bear the expense of accidental injury to a worker caused by the employment."

Westar's real complaint appears to be that it did not have notice that Saylor was claiming a work-related injury to his knee until the medical services had already been performed. However, that is a fact question which the Board resolved in favor of Saylor. Certainly, the record contains evidence from which a factfinder might have determined that the employer did not have the requisite knowledge of injury to trigger the application of K.S.A. 44-510j(h). But, as the Court of Appeals noted, appellate courts review the evidence in the light most favorable to the prevailing party and do not reweigh competing evidence or assess credibility of witnesses. *Saylor*, 41 Kan. App. 2d at 1050.

Like the Court of Appeals, we must find that there was substantial competent evidence to support the Board's finding that Westar had knowledge of Saylor's work-related injury on February 6, 2006, and that Westar refused or neglected to provide medical treatment for that injury. That factual finding triggers the application of

K.S.A. 44-510j(h), rendering Westar liable for the cost of Saylor's knee replacement surgery.

Affirmed.

BEIER and MORITZ, JJ., not participating.
HANNELORE KITTS and BENJAMIN J. SEXTON, District Judges, assigned.